# UNITED STATES DISTRICT COURT

for the

District of South Dakota

In the Matter of the Seizure and Search of: )
The property located at 257 Mellette Ct, )
Box Elder, South Dakota, and to search ) Case No. 5:20-mj-60
any curtilage, outbuildings, as well as )
persons or vehicles on the property as well )
as the content of any computer and )
electronic storage devices )

## SEARCH AND SEIZURE WARRANT

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the District of __South Dakota__  *(identify the person or describe the property to be searched and give its location)*:

See **ATTACHMENT A**, attached hereto and incorporated by reference

I find that the affidavit, or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

Evidence of crimes in violation of 18 U.S.C. §§ 2252, 2252A, as described in **ATTACHMENT B**, attached hereto and incorporated by reference.

I find that the affidavit, or any recorded testimony, establishes probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before *March 31, 2020* *(not to exceed 14 days)*

☑ in the daytime 6:00 a.m. to 10 p.m.      ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to __Daneta Wollmann__.
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30).*      ☐ until, the facts justifying, the later specific date of _____.

☐ I find that good cause has been established to authorize the officer executing this warrant to not provide notice prior to the execution of the search warrant, i.e., "no knock".

Date and time issued:  **3-17-2020  10:10am**

City and state:  __Rapid City, SD__

*Judge's signature*

__Daneta Wollmann, U.S. Magistrate__
*Printed name and title*

cc: AUSA Collins

AO 93 (Rev. 11/13) Search and Seizure Warrant (Page 2)

---

## Return

| Case No.:<br>5:20-mj-60 | Date and time warrant executed: | Copy of warrant and inventory left with: |
|---|---|---|
| Inventory made in the presence of : | | |

Inventory of the property taken and name of any person(s) seized:

## Certification

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

# UNITED STATES DISTRICT COURT

for the
District of South Dakota

In the Matter of the Seizure and Search of:   )
The property located at 257 Mellette Ct,   )   Case No.   5:20-mj-60
Box Elder, South Dakota, and to search   )
any curtilage, outbuildings, as well as   )
persons or vehicles on the property as well   )
as the content of any computer and   )
electronic storage devices

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

**SEE "ATTACHMENT A"**, which is attached to and incorporated in this Application and Affidavit

located in the District of _____ South Dakota _____, there is now concealed *(identify the person or describe the property to be seized)*:

**SEE "ATTACHMENT B"**, which is attached to and incorporated in this Application and Affidavit

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☒ evidence of a crime;

☒ contraband, fruits of crime, or other items illegally possessed;

☒ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. §§ 2252, 2252A | Possession or receipt of Child Pornography |

The application is based on these facts:

☒ Continued on the attached affidavit, which is incorporated by reference.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

☐ Your applicant requests that no notice be given prior to the execution of the search warrant, i.e., "no knock", the basis of which is set forth in the attached affidavit.

☐ Your applicant requests authorization to serve the search warrant any time day or night pursuant to Fed. R. Crim. P. 41(e)(2)(A)(ii), the basis of which is set forth in the attached affidavit.

*Applicant's signature*

Special Agent Kaylee Jeffery, AFOIG
*Printed name and title*

Sworn to before me and: ☑ signed in my presence.
☐ submitted, attested to, and acknowledged by reliable electronic means.

Date: **3-17-2020**

*Judge's signature*

City and state: __Rapid City, SD__

Daneta Wollmann, U.S. Magistrate
*Printed name and title*

AO 93 (Rev. 11/13) Search and Seizure Warrant

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF: | CASE NUMBER: 5:20-mj- 60 |
| The property located at 257 Mellette Ct, Box Elder, South Dakota, and to search any curtilage, outbuildings, as well as persons or vehicles on the property as well as the content of any computer and electronic storage devices | **AFFIDAVIT IN SUPPORT OF SEARCH WARRANT APPLICATION**<br><br>**SEALED** |

State of South Dakota    )
                    ) ss
County of Pennington   )

      I, Kaylee Jeffery, Special Agent with Department of the Air Force Office of Special Investigations (OSI), and currently assigned to Detachment 816, Ellsworth Air Force Base (EAFB), South, being duly sworn, states as follows:

      1.     I have been a Special Agent (SA) with OSI since August 2019.  Prior to becoming and OSI agent, I attended the Federal Law Enforcement Training Center (FLETC) in Glynco, Georgia.  While at FLETC, I attended the 13 week Criminal Investigator Training Program, where I was trained in various federal law enforcement techniques and civilian law.  I also attended the six week Basic Special Investigators Course (BSIC), where I was trained in various OSI techniques, to include technical and digital forensics, and military law.  I have been assigned at EAFB as a SA since August 2019.  I have on the job experience in searches, interrogations, interviews, report writing, evidence handling and processing, autopsies, and digital evidence handling and processing.

2.     During my law enforcement career, I have been involved in the investigation of cases involving the possession, receipt, and distribution of child pornography in violation of 18 U.S.C. §§ 2251, 2252, and 2252A. I have become familiar with the *modus operandi* of persons involved in the illegal production, distribution and possession of child pornography.  Based on my experience, training, and discussions with other members of law enforcement, I am knowledgeable of the various means utilized by individuals who illegally produce, distribute, receive and possess child pornography.

3.     I am aware that 18 U.S.C. §§ 2251, 2252 and 2252A, prohibit the production, distribution, receipt and possession of visual depictions of a minor engaging in sexually explicit conduct, using any means or facility of interstate or foreign commerce, including by computer or utilizing the internet.

4.     The facts set forth in this affidavit are based on my personal knowledge; knowledge obtained from other individuals, including other law enforcement officers; interviews of persons with knowledge; my review of documents, interview reports and computer records related to this investigation; communications with others who have personal knowledge of the events and circumstances described herein; and information gained through my training and experience. This affidavit contains information necessary to support probable cause for this application and does not contain every material fact that I have learned during the course of this investigation; however, no information known to me that would tend to negate probable cause has been withheld from this affidavit.

2

## ITEMS TO BE SEARCHED FOR AND SEIZED:

5.     This affidavit is submitted in support of an application for a search warrant for the property located at 257 Mellette Court, Box Elder, South Dakota, further described as a split-level, duplex, family home with a basement, cream in color, with a brown foundation.  The numbers "257" are clearly visible above the garage door, which faces approximately north (hereinafter also referred to as SUBJECT PREMISES and photographically depicted in Attachments C and D). Additionally, your affiant seeks the warrant to authorize the search of any vehicles, outbuildings, or detached garages and the curtilage on the property; any persons on the property; and the content of any computer and electronic storage devices, cellular phones, tablets, and any other electronic storage devices, including but not limited to external and internal hard drives, thumb drives, flash drives, gaming devices with storage capability, storage discs, SD cards, cameras, cellular phones, smart phones and phones with photo-taking and/or internet access capabilities.  I respectfully request the Court permit law enforcement to seize all such electronic devices located on the premises and further, to access and search the contents of said electronic devices without seeking an additional or separate warrant.

6.     The warrant is being obtained in order to search for contraband and evidence, fruits, and instrumentalities of violations of 18 U.S.C. §§ 2251, 2252 and 2252A, which criminalize the production, distribution, receipt and possession of child pornography.

3

## DEFINITIONS

7.     The following definitions apply to this Affidavit and Attachments A and B:

a.     "Chat," as used herein, refers to any kind of text communication over the Internet that is transmitted in real-time from sender to receiver.  Chat messages are generally short in order to enable other participants to respond quickly and in a format that resembles an oral conversation.  This feature distinguishes chatting from other text-based online communications such as Internet forums and email.

b.     "Child Erotica," as used herein, means materials or items that are sexually arousing to persons having a sexual interest in minors but that are not necessarily, in and of themselves, obscene or that do not necessarily depict minors in sexually explicit poses or positions.

c.     "Child pornography," as defined in 18 U.S.C. § 2256(8), is any visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct, (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct, or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct.

d.     "Cloud-based storage service," as used herein, refers to a

4

publically accessible, online storage provider that collectors of child pornography can use to store and trade child pornography in larger volumes.   Users of such a service can share links and associated passwords to their stored files with other traders of child pornography in order to grant access to their collections.  Such services allow individuals to easily access these files through a wide variety of electronic devices such as desktop and laptop computers, mobile phones, and tablets, anywhere and at any time. An individual with the password to file stored on a cloud-based service does not need to be a user of the service to access the file. Access is free and readily available to anyone who has an internet connection.

e.     "Computer," as used herein, refers to "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device" and includes smartphones, and mobile phones and devices.  See 18 U.S.C. § 1030(e)(1).

f.     "Computer hardware," as used herein, consists of all equipment which can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar computer impulses or data.  Computer hardware includes any data-processing devices (including, but not limited to, central processing units, internal and peripheral storage devices such as fixed disks, external hard

drives, floppy disk drives and diskettes, and other memory storage devices); peripheral input/output devices (including, but not limited to, keyboards, printers, video display monitors, and related communications devices such as cables and connections), as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (including, but not limited to, physical keys and locks).

g. "Computer software," as used herein, is digital information which can be interpreted by a computer and any of its related components to direct the way they work. Computer software is stored in electronic, magnetic, or other digital form. It commonly includes programs to run operating systems, applications, and utilities.

h. "Computer-related documentation," as used herein, consists of written, recorded, printed, or electronically stored material which explains or illustrates how to configure or use computer hardware, computer software, or other related items.

i. "Computer passwords, pass-phrases and data security devices," as used herein, consist of information or items designed to restrict access to or hide computer software, documentation, or data. Data security devices may consist of hardware, software, or other programming code. A password or pass-phrase (a string of alpha-numeric characters) usually operates as a sort of digital key to "unlock" particular data security devices. Data security hardware may include encryption devices, chips, and circuit boards. Data security software of digital code may include

6

programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched.  Data security software or code may also encrypt, compress, hide, or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the progress to restore it.

j.      A provider of "Electronic Communication Service" ("ESP"), as defined in 18 U.S.C. § 2510(15), is any service that provides to users thereof the ability to send or receive wire or electronic communications. For example, "telephone companies and electronic mail companies" generally act as providers of electronic communication services.  *See* S. Rep. No. 99-541 (1986), reprinted in 1986 U.S.C.C.A.N. 3555, 3568.

k.      "Electronic Storage Device" includes but is not limited to external and internal hard drives, thumb drives, flash drives, SD cards, gaming devices with storage capability, storage discs (CDs and DVDs), cameras, cellular phones, smart phones and phones with photo-taking and/or internet access capabilities, and any "cloud" storage by any provider.

l.      "File Transfer Protocol" ("FTP"), as used herein, is a standard network protocol used to transfer computer files from one host to another over a computer network, such as the Internet.  FTP is built on client-server architecture and uses separate control and data connections between the client and the server.

m.   "Hash value," as used herein, refers to a unique alpha-numeric identifier for a digital file.   A hash value is generated by a mathematical algorithm, based on the file's content.   A hash value is a file's "digital fingerprint."   Two files having identical content will have the same hash value, even if the file names are different.   On the other hand, any change to the data in a file, however slight, will change the file's hash value, even if the file name is unchanged.   Thus, if two files have the same hash value, they are said to be identical, even if they have different file names.

n.   "Internet Protocol address" or "IP address," as used herein, refers to a unique number used by a computer or other digital device to access the Internet.   An IP address is one of two versions.   Internet Protocol Version 4 (IPV4) or Internet Protocol Version 6 (IPV6).   IPV4 looks like a series of four numbers, each in the range 1-255, separated by periods.   IPV6 looks like a series of 8 numbers or letters separated by a colon.   Each series of numbers will be 0-9 and/or a-f.   Every computer or device accessing the Internet must be assigned an IP address so that Internet traffic sent from and directed to that computer or device may be properly directed from its source to its destination.   Most Internet Service Providers (ISPs – defined below) control a range of OP addresses.   IP addresses can be "dynamic," meaning that the ISP assigns a different unique number to a computer every time it accesses the Internet.   IP addresses might also be "static," if an ISP assigns a user's computer a

8

particular IP address that is used each time the computer accesses the Internet. ISPs

o.     "Internet Service Providers" ("ISPs"), as used herein, are commercial organizations that are in business to provide individuals and businesses access to the Internet.  ISPs provide a range of functions for their customers including access to the Internet, web hosting, e-mail, remote storage, and co-location of computers and other communications equipment.

p.     "Records," "documents," and "materials," as used herein, include all information recorded in any form, visual or aural, and by any means, whether in handmade, photographic, mechanical, electrical, electronic, or magnetic form.

q.     "Remote Computing Service" ("RCS"), as defined in 18 U.S.C. § 2711(2), is the provision to the public of computer storage or processing services by means of an electronic communications system.

r.     "Short Message Service" ("SMS"), as used herein, is a service used to send text messages to mobile phones.  SMS is also often referred to as texting, sending text messages or text messaging.  The service allows for short text messages to be sent from one cell phone to another cell phone or from the Web to another cell phone.  The term "computer," as defined in 18 U.S.C. § 1030(e)(1), means an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage

9

facility or communications facility directly related to or operating in conjunction with such device.

## BACKGROUND ON CHILD PORNOGRAPHY, COMPUTERS, THE INTERNET, AND EMAIL

8. I have training and experience in the investigation of computer-related crimes. Based on my training, experience, and knowledge, I know the following:

  a. Computers and digital technology have dramatically changed the way in which individuals interested in child pornography interact with each other. Computers basically serve four functions in connection with child pornography: production, communication, distribution, and storage.

  b. Child pornographers can now transfer printed photographs into a computer-readable format with a device known as a scanner. Furthermore, with the advent of digital cameras and smartphones with cameras, when the photograph is taken it is saved as a digital file that can be directly transferred to a computer by simply connecting the camera or smartphone to the computer. In the last ten years, the resolution of pictures taken by digital cameras and smartphones has increased dramatically, meaning that such pictures have become sharper and crisper. Photos taken on a digital camera or smartphone may be stored on a removable memory card in the camera or smartphone. These memory cards often store up to 32 gigabytes of data, which provides enough space to store thousands of high-resolution photographs. Video camcorders, which once recorded video onto tapes or mini-CDs, now can save video

footage in a digital format directly to a hard drive in the camera. The video files can be easily transferred from the camcorder to a computer.

c.      A device known as a modem allows any computer to connect to another computer through the use of telephone, cable, or wireless connection. Electronic contact can be made to literally millions of computers around the world. The ability to produce child pornography easily, reproduce it inexpensively, and market it anonymously (through electronic communications) has drastically changed the method of distribution and receipt of child pornography. Child pornography can be transferred via electronic mail or through file transfer protocols (FTPs) to anyone with access to a computer and modem. Because of the proliferation of commercial services that provide electronic mail service, chat services (i.e., "Instant Messaging"), and easy access to the Internet, the computer is a preferred method of distribution and receipt of child pornographic materials.

d.      The computer's ability to store images in digital form makes the computer itself an ideal repository for child pornography. The size of the electronic storage media (commonly referred to as the hard drive) used in home computers has grown tremendously within the last several years. These drives can store thousands of images at very high resolution. In addition, there are numerous options available for the storage of computer or digital files. One-Terabyte external and internal hard drives are not uncommon. Other media storage devices include CDs, DVDs, and

"thumb," "jump," or "flash" drives, which are very small devices which are plugged into a port on the computer. It is extremely easy for an individual to take a photo or a video with a digital camera or camera-bearing smartphone, upload that photo or video to a computer, and then copy it (or any other files on the computer) to any one of those media storage devices (CDs and DVDs are unique in that special software must be used to save or "burn" files onto them). Media storage devices can easily be concealed and carried on an individual's person. Smartphones and/or mobile phones are also often carried on an individual's person.

e.     The Internet affords individuals several different venues for obtaining, viewing, and trading child pornography in a relatively secure and anonymous fashion.

f.     Individuals also use online resources to retrieve and store child pornography, including services offered by Internet Portals such as Yahoo! and Hotmail, among others. The online services allow a user to set up an account with a remote computing service that provides e-mail services as well as electronic storage of computer files in any variety of formats. A user can set up an online storage account from any computer with access to the Internet. Even in cases where online storage is used, however, evidence of child pornography can be found on the user's computer or external media in most cases.

g.     As is the case with most digital technology, communications by way of computer can be saved or stored on the computer used for these

purposes. Storing this information can be intentional, i.e., by saving an e-mail as a file on the computer or saving the location of one's favorite websites in, for example, "bookmarked" files. Digital information can also be retained unintentionally, e.g., traces of the path of an electronic communication may be automatically stored in many places (e.g., temporary files or ISP client software, among others). In addition to electronic communications, a computer user's Internet activities generally leave traces or "footprints" in the web cache and history files of the browser used. Such information is often maintained indefinitely until overwritten by other data.

## SPECIFICS OF SEARCH AND SEIZURE OF COMPUTER SYSTEMS

9. Based upon my training and experience, as well as information relayed to me by agents and others involved in the forensic examination of computers, I know that computer data can be stored on a variety of systems and storage devices including hard disk drives, floppy disks, compact disks, magnetic tapes and memory chips. I also know that during a search of physical premises it is not always possible to search computer equipment and storage devices for data for a number of reasons, including the following:

a. Searching computer systems is a highly technical process which requires specific expertise and specialized equipment. There are so many types of computer hardware and software in use today that it is impossible to bring to the search site all of the technical manuals and specialized equipment necessary to conduct a thorough search. In

13

addition, it may also be necessary to consult with computer personnel who have specific expertise in the type of computer, software application or operating system that is being searched;

b.     Searching computer systems requires the use of precise, scientific procedures which are designed to maintain the integrity of the evidence and to recover "hidden," erased, compressed, encrypted or password-protected data.  Computer hardware and storage devices may contain "booby traps" that destroy or alter data if certain procedures are not scrupulously followed.  Since computer data is particularly vulnerable to inadvertent or intentional modification or destruction, a controlled environment, such as a law enforcement laboratory, is essential to conducting a complete and accurate analysis of the equipment and storage devices from which the data will be extracted;

c.     The volume of data stored on many computer systems and storage devices will typically be so large that it will be highly impractical to search for data during the execution of the physical search of the premises; and

d.     Computer users can attempt to conceal data within computer equipment and storage devices through a number of methods, including the use of innocuous or misleading filenames and extensions.   For example, files with the extension ".jpg" often are image files; however, a user can easily change the extension to ".txt" to conceal the image and make it appear that the file contains text.   Computer users can also

14

attempt to conceal data by using encryption, which means that a password or device, such as a "dongle" or "keycard," is necessary to decrypt the data into readable form. In addition, computer users can conceal data within another seemingly unrelated and innocuous file in a process called "steganography." For example, by using steganography a computer user can conceal text in an image file which cannot be viewed when the image file is opened. Therefore, a substantial amount of time is necessary to extract and sort through data that is concealed or encrypted to determine whether it is evidence, contraband or instrumentalities of a crime.

10. Based on my training and experience, as well as my consultation with other agents who have been involved in computer searches, searching computerized information for evidence or instrumentalities of a crime often requires the seizure of all of a computer system's input and output peripheral devices, related software, documentation, and data security devices (including passwords) so that a qualified computer expert can accurately retrieve the system's data in a laboratory or other controlled environment. There are several reasons that compel this conclusion:

a. The peripheral devices that allow users to enter or retrieve data from the storage devices vary widely in their compatibility with other hardware and software. Many system storage devices require particular input/output devices in order to read the data on the system. It is important that the analyst be able to properly re-configure the system as it now operates in order to accurately retrieve the evidence listed above.

15

In addition, the analyst needs the relevant system software (operating systems, interfaces, and hardware drivers) and any applications software which may have been used to create the data (whether stored on hard drives or on external media), as well as all related instruction manuals or other documentation and data security devices; and

b.     In order to fully retrieve data from a computer system, the analyst also needs all magnetic storage devices, as well as the central processing unit (CPU).   In cases like the instant one where the evidence consists partly of image files, the monitor and printer are also essential to show the nature and quality of the graphic images which the system could produce.     Further, the analyst again needs all the system software (operating systems or interfaces, and hardware drivers) and any applications software which may have been used to create the data (whether stored on hard drives or on external media) for proper data retrieval.

11.     Additionally, based upon my training and experience and information related to me by agents and others involved in the forensic examination of computers, I know that routers, modems, and network equipment used to connect computers to the Internet often provide valuable evidence of, and are instrumentalities of, a crime.   This is equally true of so-called "wireless routers," which create localized networks that allow individuals to connect to the Internet wirelessly.   Though wireless networks may be "secured" (in that they require an individual to enter an alphanumeric key or password

16

before gaining access to the network) or "unsecured" (in that an individual may access the wireless network without a key or password), wireless routers for both secured and unsecured wireless networks may yield significant evidence of, or serve as instrumentalities of, a crime—including, for example, serving as the instrument through which the perpetrator of the Internet-based crime connected to the Internet and, potentially, containing logging information regarding the time and date of a perpetrator's network activity as well as identifying information for the specific device(s) the perpetrator used to access the network. Moreover, I know that individuals who have set up either a secured or unsecured wireless network in their residence are often among the primary users of that wireless network.

### PROBABLE CAUSE AND BACKGROUND OF THE INVESTIGATION

12.    On April 11, 2019, Rapid City Police Department Detective Elliott Harding (also a member of ICAC) received a Cybertipline Report from the National Center of Missing and Exploited Children (NCMEC), report number 47279879. Facebook generated the Cybertip and indicated that a Facebook user was sending child pornography to another Facebook user via the Facebook messaging system on March 2, 2019 at 20:31:27 UTC.

13.    The Cybertip notified Det. Harding that one image was shared between two Facebook members via Facebook's Messenger function.    The information for both user's profiles are:

a.    Name: Jody Tally (Distributor)
Date of Birth: 10/05/2004
Email Address: bluegreenrocket@gmail.com
Screen/User Name: Jody.Tally.3

17

ESP User ID: 100022295991673
Profile URL: http://www.facebook.com/jody.tally.3
IP Address: 2001:48f8:1004:4c6:3d9d:8c20:2c8e:b90 (Login)
03-02-2019 19:45:18 UTC

b.   Name: Amy Cooper (Recipient)
Date of Birth 08/14/2000
Email Address: Amyc3963@gmail.com
ESP User ID: 100033584663724.
Profile URL: http://www.facebook.com/people/Amy-
       Cooper/100033584663724
IP Address: 04.229.198.192

14.   According   the·   Facebook's   Cybertip,   100022295991673
(Jody.Tally.3) distributed, "bxdr3otldqo8kckw53121331_320432831946423_
7902823434768351232_o.jpg" (hereinafter "CONTRABAND IMAGE") to
100033584663724 (Amy-Cooper) via Facebook's Messenger function. The
Cybertip classified CONTRABAND IMAGE as "lascivious exhibition" of a
prepubescent minor. Lascivious exhibition is defined as, "any image depicting
nudity and one or more of: restraint, sexually suggestive poses, focus on genitals,
inappropriate touching, adult arousal, spreading of limbs or genitals, and such
depiction lacks serious literary, artistic, political, or scientific value."

15.   The following is a description of CONTRABAND IMAGE: A picture of
a blonde girl between ages 8 and 11. The girl is wearing pink shorts, pink belt,
a multicolor tank top, and an earring in her right ear. She is posed smiling and
facing the camera. The girl's legs are spread apart enough to clearly see her
nude vagina through one of her leg openings of her shorts.

18

16.   Facebook   reported   one   IP   address   associated   with 100022295991673.  Det. Harding subpoenaed the internet service provider and the following were the results:

      a.     Midcontinent Communications
             IP Address: 2001:48F8:1004:4C6:0:0:0:0/64
             MTAMAC: F0F2498A5DA3
             CMMAC: F0F2498A5DA0
             Account Number: 700248311
             Start Date Time: 12/25/2018
             End Date Time: 5/23/2019

      b.     Account Number 7002483-11
             CODY A GREEN
             257 MELLETTE CT
             BOX ELDER SD 57719-2422
             Home Phone: 5122144893
             Business Phone: 9999999999
             SSN#: 000000898
             Driver License: NONE
             Status: A
             Status Date: 20181207
             Install Date: 20181207
             Connect Date: 20181207

17. The Account Number and IP Address are located at 257 Mellette Ct, Box Elder, SD 57719 (also referred to in the affidavit as SUBJECT PREMISES and  photographically  depicted  in  Attachments  C-D).      Midcontinent Communications explained that its practice is to issue customers a large block of IPv6 addresses called a subnet (designated by /64).  All addresses within the block will begin with the same value as highlighted above and are included in the associated subnet leases.   There was also an IPv4 Associated with the account. Det. Harding subpoenaed the internet service provider associated with the account and the following were the results:

      a.     Midcontinent Communications

IP Address: 96.3.34.30
MTAMAC: F0F2498A5DA3
CMMAC: F0F2498A5DA0
Account Number: 700248311
Start Date Time: 12/25/2018
End Date Time: 5/23/2019
Last Record Action: Active

b.      Account Number 7002483-11
CODY A GREEN
257 MELLETTE CT
BOX ELDER SD 57719-2422
Home Phone: 5122144893
Business Phone: 9999999999
SSN#: 000000898
Driver License: NONE
Status: A
Status Date: 20181207
Install Date: 20181207
Connect Date: 20181207

18.   Det. Harding subpoenaed Google regarding the Google Account associated with 100022295991673.  The results follow:

a.      Google, Inc.
Name: Jody Tally
e-Mail: bluegreenrocket@gmail.com
Services: Android, Gmail, Google Calendar, Google Docs, Google Hangouts, Google+, Location History, Web & App Activity, YouTube
Recovery e-Mail: bluegreenrocket@yahoo.com
Created on: 2016/07/01-02:10:26-UTC
Terms            of            Service            IP: 2605:6000:f590:5400:f860:80bc:4e5d:844f, on 2016/07/01-02:10:26-UTC
Google Account ID: 388146921230

```
+---------------------------+---------------------------------------+-------+
| Time | IP Address | Type |
+---------------------------+---------------------------------------+-------+
|                2019/04/01-10:38:29-UTC                                    |
2001:48f8:1004:4c6:e53b:17bc:8899:c8d0 | Login |
|                2019/03/31-17:31:11-UTC                                    |
2001:48f8:1004:4c6:e53b:17bc:8899:c8d0 | Login |
|                2019/03/30-18:30:46-UTC                                    |
2001:48f8:1004:4c6:e53b:17bc:8899:c8d0 | Login |
```

20

```
|                2019/03/30-18:21:15-UTC                    |
2001:48f8:1004:4c6:e53b:17bc:8899:c8d0 | Login |
|                2019/03/24-19:17:06-UTC                    |
2001:48f8:1004:4c6:d406:ddd8:c89b:2427 | Login |
|                2019/03/24-18:37:20-UTC                    |
2001:48f8:1004:4c6:d406:ddd8:c89b:2427 | Login |
|                2019/03/23-16:56:29-UTC                    |
2001:48f8:1004:4c6:642f:2972:12e7:11c8 | Login |
|                2019/03/23-16:49:07-UTC                    |
2001:48f8:1004:4c6:642f:2972:12e7:11c8 | Login |
|                2019/03/23-16:11:07-UTC                    |
2001:48f8:1004:4c6:642f:2972:12e7:11c8 | Login |
|                2019/03/23-15:49:13-UTC                    |
2001:48f8:1004:4c6:642f:2972:12e7:11c8 | Login |
|                2019/03/16-18:13:40-UTC                    |
2001:48f8:1004:4c6:48bc:60b2:1dcc:fae3 | Login |
|                2019/03/16-16:57:47-UTC                    |
2001:48f8:1004:4c6:48bc:60b2:1dcc:fae3 | Login |
|                2019/03/14-17:55:49-UTC                    |
2001:48f8:1004:4c6:f950:e223:c959:c800 | Login |
|                2019/03/13-19:18:26-UTC                    |
2001:48f8:1004:4c6:f950:e223:c959:c800 | Login |
|                2019/03/13-18:59:17-UTC                    |
2001:48f8:1004:4c6:f950:e223:c959:c800 | Login |
|                2019/03/13-15:42:21-UTC                    |
2001:48f8:1004:4c6:f950:e223:c959:c800 | Login |
|                2019/03/03-16:53:42-UTC                    |
2001:48f8:1004:4c6:153a:456d:9650:3940 | Login |
|                2019/03/03-16:45:19-UTC                    |
2001:48f8:1004:4c6:153a:456d:9650:3940 | Login |
|                2019/03/03-16:05:45-UTC                    |
2001:48f8:1004:4c6:153a:456d:9650:3940 | Login |
|                2019/03/02-19:45:32-UTC                    |
2001:48f8:1004:4c6:3d9d:8c20:2c8e:b90 | Login |
|                2019/03/01-03:36:03-UTC                    |
2001:48f8:1004:4c6:ecbf:aa26:f21c:d95 | Login || |2019/02/23-
17:05:21-UTC | 2001:48f8:1004:4c6:39a9:1312:721a:c998 | Login
|
|                2019/02/23-01:53:38-UTC                    |
2001:48f8:1004:4c6:e58f:853a:290b:616 | Login |
|                2019/02/17-15:00:49-UTC                    |
2001:48f8:1004:4c6:4cf5:a21b:7b6c:c062 | Login |
|                2019/02/17-08:00:32-UTC                    |
2001:48f8:1004:4c6:4cf5:a21b:7b6c:c062 | Login |
|                2019/02/16-19:31:49-UTC                    |
2001:48f8:1004:4c6:2079:8e70:903c:bea2 | Login |
```

21

| | 2019/02/15-18:42:44-UTC |
2001:48f8:1004:4c6:f01f:bc94:5b04:58c4 | Login |
| | 2019/02/15-17:15:35-UTC |
2001:48f8:1004:4c6:4cf5:a21b:7b6c:c062 | Login |
| | 2019/02/10-15:47:59-UTC |
2001:48f8:1004:4c6:d5d1:5df5:c7dc:cef8 | Login |
| | 2019/02/09-16:21:32-UTC |
2001:48f8:1004:4c6:d5d1:5df5:c7dc:cef8 | Login |
| | 2019/02/08-16:59:00-UTC |
2001:48f8:1004:4c6:95f7:4c3c:5271:7e1a | Login |
| | 2019/02/06-14:15:05-UTC |
2001:48f8:1004:4c6:c09f:496b:5010:218b | Login |
| | 2019/02/05-00:58:38-UTC |
2001:48f8:1004:4c6:cdc7:66e:a89e:6391 | Login |
| | 2019/02/04-16:49:17-UTC |
2001:48f8:1004:4c6:cdc7:66e:a89e:6391 | Login |
| 2019/02/02-14:21:54-UTC | 96.3.34.30 | Login |
| | 2019/02/01-08:37:39-UTC |
2001:48f8:1004:4c6:c575:f4b0:7e64:4f9d | Login |

4 consecutive Login events from IP 96.3.34.30 occurred during past 24 hours prior to the following event.

| 2019/02/01-07:39:43-UTC | 96.3.34.30 | Login |
| | 2019/02/01-04:50:58-UTC |
2001:48f8:1004:4c6:c575:f4b0:7e64:4f9d | Login |

19. Det. Harding subpoenaed the internet service provider regarding Facebook account 100033584663724. Below are the results:

    a.    Charter Communications
           IP Address: 104.229.198.192
           Account Number: 141684111
           Start Date Time: 7/27/2018
           End Date Time: 4/27/2019

    b.    Subscriber Name: RUTH MAENZA
           Subscriber Address:513 STOWELL DR, 4, APT. 4, ROCHESTER, NY 146161817
           User Name or Features:fourseasons@rochester.rr.com, RMAENZA1@rochester.rr.com
           Phone number:5858656392, 5854584351
           Account Number: 141684111

24.   Det. Harding subpoenaed Google regarding the Google Account associated with 100033584663724.  Below are the results:

a.   Google:
Name: Amy Cooper
e-Mail: amyc3963@gmail.com
Services: Gmail, Web & App Activity, YouTube
Created on: 2019/02/07-18:16:10-UTC
Terms of Service IP: 104.229.198.192, on 2019/02/07-18:16:09-UTC
Google Account ID: 390264545281

+-------------------------+------------------+-------+
| Time | IP Address | Type |
+-------------------------+------------------+-------+
| 2019/02/07-18:16:10-UTC | 104.229.198.192 | Login |

20.   Therefore, based on the IP addresses, Google logins, and the Facebook Cybertip, I can discern that 100022295991673 used the IP address registered to Cody Green and signed into "Jody Tally's" Google Account on March 2, 2019.   Again, on March 2, 2019, the same IP address signed into 100022295991673 and sent CONTRABAND IMAGE to 100033584663724.  The IP Address used to sign into 100033584663724 was also used to sign into "Amy Cooper's" Google Account, which is connected to 100033584663724.  The, IP address from where CONTRABAND IMAGE was distributed continued to log into "Jody Tally's" Google Account approximately 19 times over the next 30 days.

21.   On July 12, 2019, Det. Harding transferred the case to the Air Force Office of Special Investigations.  Special Agent Dreksler obtained Cody Green's Leave documentation (Attachment E).  In accordance with Air Force regulations, active duty members of the United States Air Force are required to submit a request for leave (vacation) time, which must include the member's location

during leave in case a recall becomes necessary.   These leave records are maintained in the normal course of business of each Air Force unit.   Per his leave records, Cody Green was not out of the local area on March 2, 2019.   SA Dreksler also asked Cody Green's First Sergeant, Master Sergeant (MSgt) Craig Dicks about any temporary duties to which Cody Green had been assigned on or about March 2, 2019 that might have taken him out of the local area.   According to MSgt Dicks, Cody Green's place of duty was Ellsworth Air Force Base on March 2, 2019.   Finally, SA Dreksler inquired as to Cody Green's place of residence as of November 12, 2019. All active duty members at Ellsworth Air Force Base are required to register their place of residence with their Chain of Command for recall purposes.   MSgt Dicks stated that, according to the current recall roster, Cody Green resides at 257 Mellette Court, Box Elder, South Dakota 57719.   Cody Green lives with his wife, Cassie Jean Burnham, age 38, and his daughter, Zoey-Rose Aubrey Heisler-Green, age 12.

22.   On November 8, 2019, SA Dreksler drove by the SUBJECT PREMISES. He searched for unsecured wifi networks near SUBJECT PREMISES using wifi search on an iPhone.   All available wifi networks near SUBJECT PREMISES were password protected.   (Attachment F).   SA Dreksler also conducted a public records search for "Jody" in homes near SUBJECT PREMISES. No "Jody" appeared in the public records search. On April 22, 2019, Det.   Harding   served   a   preservation   request   on   Facebook   for "http://www.facebook.com/jody.tally.3"   and   "http://www.facebook.com/people/Amy-Cooper/100033584663724".

23.     On December 17, 2019, I served Facebook with a subpoena for the any messages, records, files, logs, or information linked to the account known as, "http://www.facebook.com/jody.tally.3" from December 7, 2018 to April 1, 2019.

24.     On January 10, 2020, SA Dreksler and I reviewed the Facebook report, which disclosed the following:     The account associated with the username: jody.tally.3 was associated with a NCMEC Cybertip report dated March 4, 2019.  The account was created on October 5, 2017 and was disabled on March 2, 2019.  The current city was listed as Austin, Texas, gender was listed as female, date of birth was listed as October 5, 2004, and relationship status was listed as "in a relationship."  I observed the following:

- On January 18, 2019, "JT" searched for "zoe rose", "Zoey Rose", "zoey rose", "zoey heisler" and "zoey green"

- On February 3, 2019, "JT" searched for "zoey", "Zoey Rose", "Zoey Green", "Zoey Rose", and "Zoey Green" (SUBJECT's 12 year-old daughter, who was believed to be living with SUBJECT at the time, Zoey-Rose Aubrey Heisler-Green, was currently living at 809 Bracewood Cir Apt C, San Marcos, TX with a date of birth October 1, 2007.)

- On February 5, 2019, "Jody Tally" (JT) searched for "rapid city"

- "JT" and "Amy Cooper" communicated from February 14, 2019 – March 2, 2019; "Amy Cooper" sent photographs of five-year-old girls, to which "JT" requested to see more – the girls were all clothed.  "JT" talked about

getting turned on from the photographs and asked if "Amy Cooper" had anything "sexier".

- "JT" and "Tessa Neal" (TN) communicated from March 1, 2019 – March 2, 2019; "TN" added "JT" as a friend. "JT" asked for pictures of "TN", to which "TN" sent 17 photographs. "JT" sent two photographs. "JT" asked "TN", "What do u wear to bed? I just wear a big shirt", "TN" responded, "I like to sleep naked honestly. Not to sound all pervy or whatever..." "TN" told "JT", "I could send you some naughty pics or vids if you are as horny as you say you are ;)" "JT" replied, "I can send pics. I'm shy and my dad broke my cam. Can I see a video?" "TN" sent "JT" a video of a person's hand rubbing, on what appeared to be a vagina, over clothing. "JT" replied, "Omg I like that so much. Can I see more?", "TN" sent another video of a person's hand rubbing, on what appeared to be a vagina, over clothing with naked breasts in the background and a clock that says "12:31". "JT" responded by sending two more pictures. "TN" asked, "How old are you? I'm just curious" "JT" replied, "I'm 14. Is that ok? How old r u?" "TN" replied, "15 ^_^". "JT" then asked, "Can I see ur body?" which "TN" replied with a full body, nude picture. "JT" replied, "Omg you're so beautiful. I wish I could see a naked video. I'm so turned on". "JT" sent two more pictures, one was a naked butt, and one was a female, pulling down on her underwear, with no top, covering her face. "TN" sent a video of a girl, rubbing on her naked breasts, pulling on her nipples, with a partial face appearing to be the same face as the girl in the pictures sent by "TN". "JT" said, "Can u send one more I

26

have to go to bed now" and "TN" sent four more videos: two videos were of a female, fully nude, masturbating with a black sex toy; one was a video of a female masturbating with two fingers, wearing a t-shirt; and one video with a fully nude female masturbating with, what appears to be, a pink sex toy and seven nude pictures. "JT" replied, "Omg I love u so much. Omg ur so hot" and "TN" asked, "Do you have any you could send tonight to help me cum? ;)" to which "JT" sent two more pictures, one of a girl with only underwear on in a mirror, and one of a girl facing away from the camera, pulling her butt cheeks apart, exposing the anus and partially the vagina.

### CHARACTERISTICS COMMON TO INDIVIDUALS WHO HAVE A SEXUAL INTEREST IN CHILDREN AND/OR WHO PRODUCE, RECEIVE AND/OR POSSESS CHILD PORNOGRAPHY

25.        Based on my previous investigative experience related to child exploitation investigations, and the training and experience of other law enforcement officers with whom I have had discussions, I know there are certain characteristics common to individuals who have a sexual interest in children and/or receive, or possess images of child pornography:

a.        Individuals who have a sexual interest in children and/or receive, or possess images of child pornography may receive sexual gratification, stimulation, and satisfaction from contact with children, or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or other visual media, or from literature describing such activity.

b.    Individuals who have a sexual interest in children and/or receive, or possess images of child pornography may collect sexually explicit or suggestive materials, in a variety of media, including photographs, magazines, motion pictures, videotapes, books, slides and/or drawings or other visual media. Individuals who have a sexual interest in children or images of children oftentimes use these materials for their own sexual arousal and gratification. Further, they may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.

c.    Individuals who have a sexual interest in children and/or receive, or possess images of child pornography almost always possess and maintain their hard copies of child pornographic material, that is, their pictures, films, video tapes, magazines, negatives, photographs, correspondence, mailing lists, books, tape recordings, etc., in the privacy and security of their home or some other secure location. Individuals who have a sexual interest in children or images of children often retain pictures, films, photographs, negatives, magazines, correspondence, books, tape recordings, mailing lists, child erotica, and videotapes for many years.

d.    Likewise, individuals who have a sexual interest in children and/or receive, or possess images of child pornography often maintain their child pornography images in a digital or electronic format in a safe,

28

secure and private environment, such as a computer and surrounding area. These child pornography images are often maintained for several years and are kept close by, usually at the possessor's residence, inside the possessor's vehicle, or, at times, on their person, to enable the individual to view the child pornography images, which are valued highly.

      e.     Individuals who have a sexual interest in children and/or receive, or possess images of child pornography also may correspond with and/or meet others to share information and materials, rarely destroy correspondence from other child pornography distributors/possessors, conceal such correspondence as they do their sexually explicit material, and often maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact and who share the same interests in child pornography.

      f.     Individuals who have a sexual interest in children and/or receive, or possess images of child pornography prefer not to be without their child pornography for any prolonged time period. This behavior has been documented by law enforcement officers involved in the investigation of child pornography throughout the world. Thus, even if Shane Davison uses a portable device (such as a mobile cell phone) to access the internet and child pornography, it is more likely than not that evidence of this access will be found in his home, the SUBJECT PREMISES, as well as on electronic devices found in the home, as previously detailed and as set forth in Attachment A.

**REQUEST FOR SEALING OF APPLICATION/AFFIDAVIT**

26.     I request that the Court order that all papers submitted in support of this application, including this affidavit, the application, the warrant, and the Order itself, be sealed until further order of the Court.  These documents discuss an ongoing criminal investigation that is neither public nor known to all the targets of the investigation.   Accordingly, there is good cause to seal these documents because their premature disclosure may give targets an opportunity to flee, destroy or tamper with evidence, change patterns of behavior, notify confederates, or otherwise seriously jeopardize the investigation.

**CONCLUSION**

27.     Based on my training and experience, and the facts as set forth in this affidavit, there is probable cause to believe that there exists evidence of a crime, contraband, instrumentalities, and/or fruits of violations of criminal laws as specified herein, are located at the SUBJECT PREMISES, described further in Attachment A.  I respectfully request that this Court issue a search warrant for the SUBJECT PREMISES, authorizing the seizure and search of the items described in Attachment B.

38.     I am aware that the recovery of data by a computer forensic analyst takes significant time; much the way recovery of narcotics must later be forensically evaluated in a lab, digital evidence will also undergo a similar process.  For this reason, the "return" inventory will contain a list of only the tangible items recovered from the premises.  Unless otherwise ordered by the Court, the return will not include evidence later examined by a forensic analyst.

Special Agent Kaylee Jeffery
Department of the Air Force Office of
Special Investigations

SUBSCRIBED and SWORN to in my presence

this  17ᵗʰ  day of March, 2020.

DANETA WOLLMANN
U.S. MAGISTRATE JUDGE

31

## ATTACHMENT A
## Property to Be Searched

- The property located at 257 Mellette Ct, Box Elder, South Dakota, further described as a split-level, single family home with a basement, cream in color, with a brown foundation. The numbers "257" are clearly visible above the garage door, which faces approximately north (photographically depicted in Attachments C & D);

- any vehicles;

- outbuildings or detached garages and the curtilage on the property;

- and any persons on the property;

- the content of any computer and electronic storage devices, cellular phones, tablets, and any other electronic storage devices, including but not limited to external and internal hard drives, thumb drives, flash drives, gaming devices with storage capability, storage discs, SD cards, cameras, cellular phones, smart phones and phones with photo-taking and/or internet access capabilities.

## ATTACHMENT B

### ITEMS TO BE SEIZED

The following materials, which constitute evidence of the commission of a criminal offense, contraband, the fruits of crime, or property designed or intended for use or which is or has been used as the means of committing a criminal offense, namely violations of Title 18, United States Code, Sections 2251, 2252 and 2252A:

1. Computers, cell phones or storage media used as a means to commit the violations described above.

2. For any computer or storage medium whose seizure is otherwise authorized by this warrant, and any computer or storage medium that contains or in which is stored records or information that is otherwise called for by this warrant (hereinafter, "COMPUTER"):

   a. evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

   b. evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

33

c. evidence of the lack of such malicious software;

d. evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use, and events relating to crime under investigation and to the computer user;

e. evidence indicating the computer user's state of mind as it relates to the crime under investigation;

f. evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence;

g. evidence of programs (and associated data) that are designed to eliminate data from the COMPUTER;

h. evidence of the times the COMPUTER was used;

i. passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

j. documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

k. records of or information about Internet Protocol addresses used by the COMPUTER;

l. records of or information about the COMPUTER's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user

34

entered into any Internet search engine, and records of user-typed web addresses; and

m. contextual information necessary to understand the evidence described in this attachment.

3. Routers, modems, and network equipment used to connect computers to the Internet.

4. Child pornography and child erotica.

5. Records, information, and items relating to violations of the statutes described above including:

   a. Records, information, and items relating to the occupancy or ownership of 257 Mellette Ct, Box Elder, South Dakota, including utility and telephone bills, mail envelopes, or addressed correspondence; Records, information, and items relating to the ownership or use of computer equipment found in the above residence, including sales receipts, bills for Internet access, and handwritten notes;

   b. Records and information relating to the identity or location of the persons suspected of violating the statutes described above; and

   c. Records and information relating to sexual exploitation of children, including correspondence and communications between various Seller and Buyer Accounts.

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such

as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies, CDs, DVDs).

The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

The term "storage medium" includes any physical object upon which records computer data.  Examples include external and internal hard drives, thumb drives, flash drives, gaming devices with storage capability, storage discs, SD cards, hard disks, RAM, flash memory, CDs, DVDs, and other magnetic or optical media.

ATTACHMENT C



ATTACHMENT D

